UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ROBERT FORBES, JR. a/k/a RA RA
a/k/a HENNY,
                       Defendant.

Case # 20-CR-06140-FPG

DECISION AND ORDER

## BACKGROUND

On October 15, 2020, Defendant Robert Forbes, Jr. a/k/a Ra Ra a/k/a Henny was charged in a five-count indictment with Hobbs Act Conspiracy, Hobbs Act Robbery, Attempted Hobbs Act Robbery, and Use of a Firearm During and in Relation to a Crime of Violence. ECF No. 21. The charges relate to an attempted home invasion robbery at 222 Avenue E, Rochester, New York on March 25, 2020, and a home invasion robbery at 64 Wellington Avenue, Rochester, New York on March 26, 2020. ECF No. 68. By Order dated October 20, 2020, this case was referred to United States Magistrate Judge Mark W. Pedersen pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (b)(1)(B). ECF No. 23.

On August 12, 2021, a federal grand jury returned a superseding indictment (the "Indictment"), which charged Defendant with additional counts of Hobbs Act Robbery, Attempted Hobbs Act Robbery, and Using a Firearm During and in Relation to a Crime of Violence. ECF No. 68. The additional charges relate to a home invasion robbery at 225 Penhurst Drive, Rochester, New York on February 18, 2020, and a home invasion robbery at 331 Conrad Drive, Rochester, New York on March 22, 2020. *Id*.

On October 25, 2021, Defendant filed an omnibus motion seeking dismissal of the Indictment on various grounds, and suppression of identification testimony, physical evidence,

1

and statements. ECF No. 94. On November 19, 2021, the government responded in opposition to Defendant's omnibus motion. ECF No. 101. On February 17, 2022, Defendant filed a supplemental motion to suppress, ECF No. 120, and the government responded. ECF No. 121. On April 21, 2022, Defendant filed a second supplemental motion to suppress statements and identifications, ECF No. 128, and the government responded. ECF No. 129.

On June 10, 2022, Magistrate Judge Pedersen issued a Report and Recommendation ("R&R"), recommending that the District Court deny the aspects of Defendant's motion seeking to (1) dismiss the Indictment on various grounds; (2) suppress physical evidence seized from 953 Dewey Avenue and a 2019 Mitsubishi Outlander; (3) suppress physical evidence seized from a Kia Sportage; (4) suppress Defendant's statements; (5) suppress identification testimony; (7) suppress physical evidence seized from Defendant's Mitsubishi Mirage; and (8) suppress evidence obtained from Defendant's Motorola E6 cell phone after it was seized from Defendant's Mitsubishi Mirage and searched pursuant to a search warrant. ECF No. 135.

On August 15, 2022, Defendant timely objected to the R&R after filing numerous extension requests, largely renewing arguments made before Judge Pedersen, asserting that (1) the Indictment should be dismissed; (2) the physical evidence seized should be suppressed; and (3) Defendant's statements should be suppressed.[1] ECF No. 142. On August 29, 2022, the government filed its response to Defendant's objections in which it withdrew opposition to dismissal of Counts 5 and 7 of the Indictment. ECF No. 144. For the reasons explained below, the Court (1) adopts Magistrate Judge Pedersen's R&R in full, except with respect to Counts 5 and 7 of the Indictment; (2) dismisses Counts 5 and 7 of the Indictment; and (3) denies Defendant's motions.

---

[1] The Court has analyzed the remaining, unopposed portions of Judge Pedersen's R&R and determines that they are free of clear error.

**LEGAL STANDARD**

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R or when the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009).

After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). In addition, "[t]he Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings." *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013); *see also Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008).

**DISCUSSION**

**I.    Motion to Dismiss the Indictment on Various Grounds**

    **a.    Motion to Dismiss Counts 4 and 6 of the Indictment:  Factual Insufficiency**

Defendant argues that the Indictment fails to allege the essential elements of the crimes charged in the above counts in violation of his Fifth and Sixth Amendment rights. Defendant asserts that "[t]he indictment [ ] does no more than recite types of crimes, without any specific facts describing alleged criminal acts" and thus fails to provide notice of the charges against him. ECF No. 142 at 6. The Court disagrees.

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment must contain the "elements of the offense charged and fairly inform [ ] a defendant of the charge against which he must defend" and enable the defendant to

3

"plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87 (1974)). "Nevertheless, 'an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992), *cert. denied*, 504 U.S. 926 (1992)). "Generally, the indictment does not have to specify evidence or details of how the offense was committed. Simply put, the validity of an indictment is tested by its allegations, not by whether the Government can prove its case." *United States v. Walters*, 963 F. Supp. 2d 125, 130 (E.D.N.Y. 2013) (citations omitted); *see also United States v. Raniere*, 384 F. Supp. 3d 282, 301 (E.D.N.Y. 2019) ("[T]here is a difference between what the Government must prove at trial and what it must plead in the indictment.").

Judge Pedersen correctly concluded in his R&R that Counts 4 and 6 include sufficient factual allegations. The allegations contained in Counts 4 and 6 sufficiently track 18 U.S.C. § 1951(a) as charged in the Indictment.

Count 4 of the Indictment provides:

> On or about March 22, 2020, in the Western District of New York, the defendants, ROBERT FORBES, JR. a/k/a Ra Ra a/k/a Henny, and RAEKWON GREEN a/k/a Bundy a/k/a Bundles, did unlawfully attempt to obstruct, delay and affect, commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in particular, the attempted robbery of controlled substances and United States currency derived from the sale of controlled substances belonging to a person engaged in the unlawful possession and distribution of controlled substances, from, and in the presence of, Victim B and Victim C, persons known to the Grand Jury. All in violation of Title 18, United States Code, Sections 1951(a) and 2.

ECF No. 68 at 3.

Count 6 of the Indictment provides:

> On or about March 25, 2020, in the Western District of New York, the defendant, ROBERT FORBES, JR. a/k/a Ra Ra a/k/a Henny, did unlawfully attempt to obstruct, delay and affect, commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in particular, the attempted robbery of controlled substances and United States currency belonging to a person believed by the defendant to be engaged in the unlawful possession and distribution of controlled substances, from, and in the presence of, Victim D, a person known to the Grand Jury. All in violation of Title 18, United States Code, Sections 1951(a) and 2.

*Id*. at 4.

Count and 4 and 6 include not only the language of the statute, but also specific factual allegations, such as the dates of the attempted robberies, their targets, and the place of the attempted robberies. That is all that the Rules require. For these reasons and the reasons more fully stated in Judge Pedersen's R&R, this aspect of Defendant's motion is denied.

    **b.**    **Motion to Dismiss Counts 2, 4, 6 and 8 of the Indictment:  Failure to Allege Mens Rea**

Next, Defendant argues that the Indictment fails to sufficiently allege the requisite mens rea. Specifically, Defendant contends that Counts 2, 4, 6 and 8—the Hobbs Act Robbery and Attempted Hobbs Act Robbery counts—"lack necessary allegations of criminal intent." ECF No. 142 at 6. The Court disagrees.

It is well settled that the statutory definition of "robbery" in 18 U.S.C. § 1951(b)(1) implies "knowing" and "willful" conduct, and an indictment so charging is sufficient even if it does not explicitly reference those terms. *United States v. Jackson*, 513 F. App'x 51, 55 (2d Cir. 2013) (summary order) (holding that "[a]lthough the indictment did not specifically contain the words 'knowingly' or 'willfully,' the plain and common-sense reading of the indictment put the defendant on notice of what the charges against him were, such that he was not prejudiced in the preparation of his defense"); *United States v. Tobias*, 33 F. App'x 547, 549 (2d Cir. 2002) ("The indictment tracked the language of 18 U.S.C. § 1951, using the term 'robbery,' which necessarily

5

implies knowing and willful conduct."); *United States v. McGee*, No. 15-CR-6079 (JWF), 2017 WL 667199, at *2 (W.D.N.Y. Feb. 17, 2017) (holding that an indictment was "sufficient to assert the mens rea element of robbery even though it does not contain the words 'knowingly' or 'willfully'"), *report and recommendation adopted*, No. 15-CR-6079-FPG, 2017 WL 2880121 (W.D.N.Y. July 6, 2017); *United States v. McCoy*, 14CR-6181 EAW, 2016 WL 6952351, at *3-5 (W.D.N.Y. Nov. 28, 2016).

Despite the absence of the terms "knowingly" or "willfully", the Court agrees with Judge Pedersen's conclusion that the Indictment's inclusion of the term "robbery" and its statutory definition sufficiently alleges the requisite mens rea.[2] As Judge Pedersen explained in his R&R, the term "robbery," as used in all four Counts, implies "knowing" and "willful" conduct in satisfaction of the mens rea element. Counts 2, 4, 6, and 8 sufficiently track the language of 18 U.S.C. § 1951(b)(1). For these reasons, the Court denies this aspect of Defendant's motion.

   c.  **Motion for Dismissal of Counts 2 through 9 of the Indictment: Factual Insufficiency with Respect to "Interstate Commerce" and "Aiding and Abetting"**

Defendant again asserts that the Indictment fails to present evidence or factual allegations which would satisfy the essential elements of each charge. *U.S. v. Jackson*, 749 F. Supp. 2d 19 (2nd Cir. 2010); *U.S. v. Hooker*, 841 F.2d 1225 (4th Cir. 1988) (en banc). Specifically, Defendant first argues that Counts 2 through 9 fail to specifically allege how Defendants attempted to interfere with or obstruct interstate commerce and, relatedly, asserts that his alleged misconduct does not satisfy the "interstate commerce" element of the Hobbs Act. Second, Defendant argues the

---

[2] "Robbery" means "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." 18 U.S.C. § 1951(b)(1).

6

Indictment lacks allegations as to how Defendant "aided and abetted" Counts 2 through 9. The Court disagrees.

With respect to Defendant's first argument, because the Hobbs Act criminalizes robberies that affect interstate commerce "in any way or degree," a defendant's alleged misconduct need only have a "de minimis" effect on interstate commerce. *United States v. Parkes*, 497 F.3d 220, 230 (2d Cir. 2007), *cert. denied*, 552 U.S. 1220 (2008). Moreover, when an alleged robber attempts to steal drugs or drug proceeds from a drug dealer, "proof of such an attempt in itself supports the conclusion that the robber attempted to affect interstate commerce, and the robber is therefore convictable under the Hobbs Act." *United States v. Lee*, 834 F.3d 145, 152 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1599 (2017). In short, because the Indictment includes allegations that Defendant targeted drug proceeds and controlled substances, its allegations are sufficient and adequately specific to allege a nexus to interstate commerce as required by the Hobbs Act, as Judge Pedersen correctly concluded. This aspect of Defendant's motion is accordingly denied.

With respect to Defendant's claim that the Indictment lacks allegations as to how Defendant "aided and abetted" the crimes such that he can adequately defend against the charges, the Court holds that the Indictment's citation to 18 U.S.C. § 2 in each of those counts puts Defendant on notice that aiding and abetting is a theory that the government might pursue at trial. *United States v. Weintraub*, 27 F. App'x 54, 56 (2d Cir. 2001) ("[The defendant] could not have been surprised by the government's reliance on the aiding-and-abetting theory because the indictment cited the aiding-and-abetting statute . . . 18 U.S.C. § 2.") Moreover, as the government correctly argued in its response to Defendant's motion, "it is well established that a trial judge may properly give an aiding and abetting instruction even if the indictment does not expressly charge a violation of 18 U.S.C. § 2." *United States v. Eisner*, 59 F. App'x 379, 382 (2d Cir. 2003), citing

7

*United States v. Mucciante*, 21 F.3d 1228, 1234 (2d Cir. 1994) (internal citations omitted).  For these reasons, this aspect of Defendant's motion is denied.

      **d.**      **Motion to Dismiss Counts 3, 5, 7 and 9 of the Indictment: Factual Insufficiency of Underlying Hobbs Act Charges and "Crimes of Violence"**

Defendant argues that the above counts charging Defendant with "Use of a Firearm During and in Relation to a Crime of Violence" should be dismissed because the factual allegations of the underlying crimes, Hobbs Act Robbery and Attempted Hobbs Act Robbery, as charged in Counts 2, 4, and 8, are insufficient.  ECF No. 142 at 14.  Defendant argues further that Counts 3, 5, 7, and 9 should be dismissed because the government's allegations of "attempting" Hobbs Act Robbery do not qualify as "crimes of violence" under 18 U.S.C. § 924(c).  ECF No. 142 at 15.

Defendant's first argument is without merit.  Because the Court has concluded that the factual allegations set forth by the government in Counts 2, 4, 6, and 8 are sufficient to support an Indictment for Hobbs Act Robbery or Attempted Hobbs Act Robbery, Counts 3, 5, 7, and 9—crimes charged in furtherance of Hobbs Act Robbery or Attempted Hobbs Act Robbery—also survive Defendant's sufficiency challenge.  The Court accordingly denies this aspect of Defendant's motion.

While these Counts survive dismissal for insufficiency for the reasons stated above, Defendant's motion to dismiss with respect to Counts 5 and 7 is granted on other grounds.  The underlying crime for each Count, contained within Counts 4 and 6 charging Attempted Hobbs Act Robbery, is not a "crime of violence" for the purposes of 18 U.S.C. § 924(c)(1)(A)(ii).  The Supreme Court recently decided, after the filing of Judge Pedersen's R&R, that Attempted Hobbs Act Robbery does not qualify as a "crime of violence" under 18 U.S.C. § 924(c)(3)(A).  *United States v. Taylor*, ___ U.S. ___, 132 S. Ct. 2015, 2021-22 (2022).  The government has withdrawn its opposition to dismissal of such charges.  Accordingly, Counts 5 and 7 are dismissed.

e.      **Motion to Dismiss Count 1 for Multiplicity**

Defendant argues that Count 1 of the Indictment is multiplicitous of Counts 2, 4, 6, and 8 because "Count 1 charges a 'general conspiracy' and Counts 2, 4, 6, and 8 'have their own conspiracy element directly in the counts of the indictment.'" ECF No. 142 at 27.  However, as Judge Pedersen correctly explained in his R&R, because the crime charged in Count 1—Hobbs Act Conspiracy—requires an agreement between those acting together and such an agreement is not an element of the crime charged in Counts 4 and 6, Attempted Hobbs Act Robbery, Count 1 is not multiplicitous of Counts 4 and 6.  Relatedly, because a defendant could be charged with Counts 2 and 8—Hobbs Act Robbery—without a charge of conspiracy, such as the charge included in Count 1, Count 1 is not multiplicitous of Counts 2 and 8.  For these reasons, the Court denies this aspect of Defendant's motion.

**II.     Motion to Suppress Physical Evidence**

Defendant argues the search warrants issued by Monroe County Judge Vincent Dinolfo to search Defendant's 953 Dewey Avenue residence and Defendant's 2019 Mitsubishi Outlander (the "Outlander") are invalid because they are not supported by probable cause and any evidence obtained in the authorized searches must be suppressed.  For the reasons set forth below, the Court disagrees.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "To establish probable cause to search a residence, two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). Here, the parties dispute whether probable cause existed to believe that evidence of the crime

would be located at 953 Dewey Avenue and in the Outlander.  "[P]robable cause to search a place exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place' and a federal court must apply a 'totality-of-the-circumstances analysis' in pursuing this inquiry." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991), *cert. denied*, 503 U.S. 943 (1992) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  When reviewing the validity of a search warrant, the duty of [the] court . . . is "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing] that probable cause existed.'" *Gates*, 462 U.S. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

Here, the search warrant application submitted by Rochester Police Department Investigator Mark Rohr established probable cause to search both 953 Dewey Avenue and the Outlander.  Investigator Rohr's supporting affidavit stated, among other things, that a vehicle—a gray Mitsubishi sedan later identified as a Mitsubishi Mirage—with license plate number JSL5469 was observed by Rochester Police Department Investigator Andrew Mackenzie on March 25, 2020 in front of the 200 Avenue E location shortly before the first home invasion of 222 Avenue E.  A license plate database search revealed that the vehicle was registered to Defendant, who resided at 953 Dewey Avenue.

Further, on March 26, 2020, at 12:28 a.m., law enforcement responded to the second home invasion at 64 Wellington Avenue in which, according to the victims, two males, one of whom was armed with a handgun, kicked in the door, entered the residence, and stole various items of personal property from the victims, including two cell phones.  *See* ECF No. 94-1 at 11. Investigator Rohr recognized co-defendant Eric Lowe from a Ring doorbell video obtained from the residence.  In addition, on March 26, 2020, at 8:00 p.m., law enforcement observed Defendant's Mitsubishi Mirage pull into the driveway of co-defendant Lowe's residence, the address of which

10

was obtained from a victim's "Find My iPhone" app for one of the cell phones stolen during the robbery.  Further, Investigator Rohr noted in his affidavit that Defendant was on parole and his parole address was 953 Dewey Avenue.  Thus, considering the totality of the circumstances, the Court finds that the search warrant application prepared by Investigator Rohr, an experienced investigator, sufficiently established probable cause to search Defendant's residence for evidence of the robberies.

In addition, while the Outlander does not appear to have been directly involved in either of the above home invasions, Investigator Rohr's affidavit sets forth evidence connecting Defendant to the Outlander.  *See* ECF No. 94-1 at 13.  Specifically, an ATF federal contracted confidential informant identified Defendant from Ring doorbell camera footage from the home invasion at the 64 Wellington Avenue residence on March 26, 2020.  The same ATF confidential informant stated that Defendant had used an Outlander for numerous home invasion robberies and kept a handgun in an Outlander with license plate number JJP6649, which is registered to the Defendant.  Other evidence adduced by the government supports probable cause for the issuance of the warrant, but the Court finds the above evidence more than sufficient to establish the requisite probable cause to search the vehicle and residence.

For these reasons, the Court holds that the totality of the circumstances provided a fair probability to Judge Dinolfo that contraband or evidence of a crime would be found in the Outlander and Defendant's 953 Dewey Avenue residence.  That is, Judge Dinolfo's determination that the search warrants were supported by probable cause was reasonable.  Because the Court concludes that the search warrants were supported by probable cause, the Court does not address the government's "good faith exception" argument.  This aspect of Defendant's motion is accordingly denied.

### III.  Motion to Suppress All Evidence from Defendant's April 1, 2020 Stop

Defendant argues for suppression of evidence obtained from law enforcement's search of a Kia Sportage that occurred on April 1, 2020 after Defendant led law enforcement on a high-speed chase in the vehicle and law enforcement stopped the vehicle for traffic infractions. Defendant also seeks a hearing to challenge the validity of the stop. For the reasons set forth below, the Court rejects Defendant's arguments.

As a general matter, a "defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates this his Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993) (citing *Alderman v. United States*, 394 U.S. 165, 171-72 (1969) (additional citations omitted)). A defendant may invoke the protection of the Fourth Amendment only where the government has "violated the defendant's own constitutional rights," as opposed to the rights of another. *United States v. Payner*, 447 U.S. 727, 731 (1980). With respect to a search of a vehicle, a defendant "must show, among other things, a legitimate basis for being in [the vehicle], such as permission from the owner." *United States v. Ponce*, 947 F.2d 646, 649 (2d Cir. 1991), *cert. denied*, 503 U.S. 943 (1992) (citation omitted); *United States v. Sanchez*, 635 F.2d 47, 64 (2d Cir. 1980) (finding defendant could not object to the search of a car where he had demonstrated "neither ownership of the [vehicle], nor license from the owner to possess the [vehicle]."). A defendant must demonstrate receipt of such permission from the owner. *Sanchez*, 635 F.2d at 64. "Mere control over a vehicle" is insufficient. *United States v. Ruggiero*, 824 F. Supp. 379, 392 (S.D.N.Y. 1993), *aff'd*, 44 F.3d 1102 (1995).

As Judge Pedersen correctly observed in his R&R, Defendant stated that he "was driving in [his] brother Darius Taylor's 2019 Kia Sportage." ECF No. 135 at 34. Defendant provides no

proof that his brother owned the Kia Sportage and, even if such proof were provided, Defendant did not state that he received permission to drive the vehicle.  For these reasons, Defendant lacks standing to move to suppress evidence seized from the Sportage because he had no Fourth Amendment privacy interest in that vehicle at the time of the search.  This aspect of Defendant's motion is accordingly denied.

### IV.   Motion to Suppress Physical Evidence: Cell Phone and Contents

Law enforcement seized a Motorola E6 cell phone from Defendant's Mirage after it was stopped for traffic infractions on March 26, 2020, while Defendant and co-defendant Lowe were in the car, and later impounded.  Defendant argues that the search warrant obtained on April 1, 2020, after the Mirage was impounded, authorizing the search and seizure of the Motorola E6 cell phone is invalid and any evidence resulting from a search of the phone should be suppressed.  Defendant argues that the information contained in the affidavit of FBI Special Agent Theresa Lloyd submitted in support of the warrant application failed to establish probable cause because it failed to establish a nexus between Defendant and the alleged home robberies.  For the reasons set forth below, the Court rejects Defendant's arguments.

In her April 1, 2020 warrant application, Special Agent Lloyd sufficiently established probable cause that the Motorola E6 cell phone may contain evidence relevant to the home invasions on March 25, 2020 at 222 Avenue E and on March 26, 2020 at 64 Wellington Avenue.  *See* ECF No. 94-1 at 48.  In her affidavit, Special Agent Lloyd stated that, from her experience, knowledge, and training, individuals who perpetrate home robberies often utilize cell phones to conduct the robberies and arrange for meetings after the robberies, and that the phones often contain the names and contact information for coconspirators.  She also indicated that Defendant's Mirage was seen by Rochester Police Department Investigator Andrew Mackenzie near the alleged

13

Avenue E robbery approximately thirty minutes before that robbery occurred. In addition, a witness of the Avenue E robbery indicated that the two men who robbed the home appeared to be talking to a third individual on a cell phone. One of the individuals identified in both robberies was co-defendant Eric Lowe, and law enforcement saw Defendant's gray Mirage at Lowe's home the night of March 26, 2020. In addition, when law enforcement pulled the Mirage over, they found co-defendant Eric Lowe, as well as surgical face masks, a black ski mask, and zip ties, which Special Agent Lloyd indicated in her experience were used during robberies.

For these reasons and the reasons explained by Judge Pedersen in his R&R, the warrant application in question sufficiently established a nexus between the two home invasions and Defendant, such that Defendant's cell phone may contain evidence relevant to the alleged crimes. The search and seizure warrant authorized for Defendant's Motorola E6 cell phone was supported by probable cause. This aspect of Defendant's motion is accordingly denied.

**V.    Motion to Suppress Identification Testimony**

Defendant moves to suppress identification testimony on the basis that the identification procedure—a six-person photo array—used to identity Defendant was unduly suggestive. Defendant argues that the array was unduly suggestive because Defendant is in the "lower central photo;" the lighting is different in Defendant's photo such that Defendant is "highlighted;" the other individuals had notably "more facial hair" than him; and every individual pictured except Defendant had a mustache. Defendant also moves for suppression of Defendant's identification from a single photo of Defendant on an agent's smart phone. For the reasons below, the Court rejects Defendant's arguments.

As a general matter, "[w]hen the appearance of participants in a lineup is not uniform with respect to a given characteristic, the principal question in determining suggestiveness is whether

the appearance of the accused [ ] so stood out from all of the other[s] [sic] . . . as to suggest to an identifying witness that [that person] was more likely to be the culprit." *United States v. Wong*, 40 F.3d 1347, 1359-60 (2d Cir. 1994) (internal quotation marks and citations omitted, emphasis in original), *cert. denied*, 514 U.S. 1113 (1995). Further, "[t]here is no requirement that a suspect in a lineup be surrounded by people identical in appearance." *United States v. Brown*, 167 F. Supp. 3d 447, 450 (W.D.N.Y. 2016) (citation omitted).

As Judge Pedersen correctly concluded in his R&R, the photo array was not unduly suggestive. The photo array contained six photos of African American males of a similar age and build, similar hair style and length, and all possessed some facial hair. Defendant does not suggest how his placement in the lower center of the array is suggestive, nor does Defendant cite any legal support for such a proposition. Moreover, Defendant's skin tone strongly resembles that of the other five individuals included in the array. The lighting in at least three other photos is similar in brightness to that of Defendant, which defeats Defendant's argument that the photo array was unduly suggestive due to the lighting and depiction of two darker-skinned individuals. *United States v. Bautista*, 23 F.3d 726, 731 (2d Cir. 1994) ("While it is true that the photograph of Minier-Contreras is slightly brighter and slightly more closeup than the others, we find that these differences did not render the array suggestive."); *Brown*, 167 F. Supp. 3d at 450 ("The other individuals pictured in the array have complexions similar and different than Defendant's in terms of darkness/lightness, but all appear to have similar racial complexions, and the differences in the shades of some of the complexions of some of the individuals depicted does not render the photo array unduly suggestive.")

For these reasons and the reasons stated in Judge Pedersen's R&R, the Court denies this aspect of Defendant's motion. In addition, because the government represented that it does not

intend to call the witness who made the separately challenged identification referenced above, the Court finds this aspect of Defendant's motion moot.

### VI. Motion to Suppress Statements

Defendant argues that "all oral and written statements taken by law enforcement starting on April 1, 2020" should be suppressed. ECF No. 142 at 41. Defendant contends that his statements were made involuntarily and in violation of his Fifth Amendment right against self-incrimination, and therefore, the statements should be suppressed.

Defendant was brought into custody on April 1, 2020, after leading police on a high-speed chase and crashing the Kia Sportage he was driving into a marked police vehicle. Defendant argues that his post-arrest participation in an interview with law enforcement from approximately 10:22 p.m. to 4:20 a.m. was involuntary because he was experiencing significant pain as a result of dog bites he sustained on his right leg—injuries law enforcement was aware of. Defendant claims that law enforcement represented that he would be treated with leniency for his apparent parole violations if he cooperated with law enforcement's questioning, again rendering his participation in the interview involuntary. Defendant's arguments are without merit.

A defendant's statements are voluntary if they are "the product of an essentially free and unconstrained choice[.]" *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973). "A statement is involuntary when it [is] extracted by threats, violence or express or implied promises sufficient to overbear the [suspect's] will and critically impair his capacity for self-determination." *United States v. LeBrun,* 363 F.3d 715, 724 (8th Cir. 2004). The government bears the burden of demonstrating that the defendant's statements were voluntary. *United States v. Capers*, 627 F.3d 470, 479 (2d Cir. 2010). To determine whether a defendant's statements were made voluntarily,

16

courts look to the totality of the circumstances surrounding the statements. *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991).

Statements made by an injured or hospitalized individual like Defendant are voluntary where, like here, a defendant is "lucid and able to engage the agents in coherent conversation despite the pain attendant to her injury." *United States v. Siddiqui*, 699 F.3d 690, 707 (2d Cir. 2012), *cert. denied*, 569 U.S. 986 (2013). "Courts tend to view a hospitalized defendant's statements as voluntary where the defendant was lucid and police conduct was not overbearing." *Id.*; *see also Pagan v. Keane*, 984 F.2d 61, 63 (2d Cir. 1993) (finding the defendant's post-*Miranda* statements voluntary where, despite having undergone surgery for significant injuries due to gunshot wounds twenty hours prior, a police officer that conducted the interview described the defendant as "very alert [and] able to answer all our questions with no problem," despite being in a weakened condition, the defendant tried to blame an accomplice demonstrating he understood the nature of the police questioning, and where medical records described him as "awake, alert, and orientated").

With respect to Defendant's argument that the pain he experienced during the police interview rendered his statements involuntary, the Court concludes that the totality of the circumstances does not support a finding that Defendant's statements were made involuntarily. As Judge Pedersen correctly observed, Defendant apparently fell asleep and can be heard snoring around 12:02 a.m., as well as at different times after the police interview was complete, which tends to suggest that Defendant was not in such excruciating pain from his injuries such that his statements may be held to be involuntary. In addition, Defendant provided coherent, timely answers to law enforcement's questions during the interview. Law enforcement signaled their awareness of Defendant's injuries in the interview by asking how he was doing and providing a

chair to elevate Defendant's injured leg, but nothing in law enforcement's conduct suggests Defendant's pain or alleged exploitation of the pain factored into Defendant's choice to participate in the police interview.

Similarly, Defendant's statements were not involuntary because of law enforcement's representations to him. It is well established that "[m]aterial misrepresentations based on unfulfillable or other improper promises might perhaps overbear a defendant's will," *United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995), insofar as "they overcome his desire to remain silent*,*" *United States v. Gaines*, 295 F.3d 293, 299 (2d Cir. 2002). Courts should not, however, imply an improper promise or misrepresentation from vague or ambiguous statements by law enforcement officers, especially with respect to promises of leniency. *See id*. ("[V]ague promises of leniency for cooperation . . . generally will not, without more, warrant a finding of coercion."); *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) ("Generally, promises of leniency will not render a confession involuntary.").

Defendant's argument that law enforcement coerced his statements with promises of leniency with respect to Defendant's parole violations is without merit. The totality of the circumstances surrounding Defendant's interview suggest that while law enforcement did offer anecdotes of leniency others had received, law enforcement did not promise or guarantee, directly or indirectly, any type of sentence or punishment to Defendant such that Defendant's statements could be held to be involuntarily given. The evidence shows that while Defendant was told by law enforcement that a defendant's cooperation ordinarily results in some leniency from a prosecutor, he was alternatively informed by Agent Martineck that Defendant was certain to receive "time" for his alleged violations. Even if law enforcement's general statements of potential leniency could have influenced Defendant to participate, law enforcement's conduct in this respect was not so

overbearing as to render Defendant's statements involuntary. Law enforcement affirmatively informed Defendant that he would not be spared punishment. The Court accordingly holds that Defendant's statements were not involuntary. For these reasons, this aspect of Defendant's motion is denied.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS Magistrate Judge Pedersen's R&R, ECF No. 135, in all respects. Counts 5 and 7 are DISMISSED. Except with respect to Counts 5 and 7, Defendant's motion, ECF No. 94, is DENIED.

IT IS SO ORDERED.

Dated: September 29, 2022
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Court Judge